IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CONOPCO, INC. d/b/a UNILEVER

     Plaintiff,

vs.

RETROBRANDS USA LLC and
JEFFREY KAPLAN, an individual

     Defendants.

_____/

## COMPLAINT

Plaintiff, Conopco, Inc. d/b/a Unilever, by its undersigned attorneys, Duane Morris LLP, for its Complaint alleges as follows:

## SUBSTANCE OF THE ACTION

This is an action for federal unfair competition and false advertising under Section 43(a) of the Trademark Act of 1946 (the "**Lanham Act**"), 15 U.S.C. § 1125(a), and for substantial and related claims of trademark infringement and unfair competition, under the state and common laws of the State of Florida.

Plaintiff brings this action based on Defendants' unauthorized past, current and planned use of certain trademarks, trade dress, and other intellectual property exclusively associated with Plaintiff and its SUNSILK products in connection with Defendants' marketing, advertising and promotion of personal care and hair care products, as well as Defendants' acts of unfair competition and false advertising—all of which are designed to create consumer confusion as to the source of Defendants' products and trade off of and exploit Plaintiff's substantial goodwill in its exclusive SUNSILK intellectual property.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, Sections 1332, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1332, 1338(a) and 1338(b), and under principles of supplementary jurisdiction.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Venue properly lies in this District under Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. §§ 1391(b) and 1391(c) because Defendants do business in and/or have substantial contacts with and/or may be found in the Southern District of Florida and a substantial portion of the events at issue have arisen and/or will arise in this judicial district.

## PARTIES

2.      Plaintiff Conopco, Inc. d/b/a Unilever (hereinafter "**Unilever**" or "**Plaintiff**") is a corporation duly organized and existing under the laws of New York with offices at 800 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, and duly registered in the state of Florida, as a foreign corporation.

3.      Unilever and its predecessors and affiliates (hereinafter included in the collective definitions of "Unilever" and "Plaintiff"), either directly or through third-party retailers, have sold for a number of years and continue to sell, various personal care products including, but not limited to, shampoo, hair conditioner, and hair styling creams and gels, under the SUNSILK trademark and the SUNSILK logos (depicted below)





(collectively, "**SUNSILK Marks**") in the United States.

4.　　Defendant Retrobrands USA LLC ("**Retrobrands USA**") is a Florida limited liability company duly organized and existing under the laws of Florida with an office at 1771 Blount Road Suite 203, Pompano Beach, Florida 33069.

5.　　Defendant Jeffrey L. Kaplan ("**Kaplan**") is the Manager and President of Retrobrands USA and controls and/or directs, in whole or in part, the activities and operations of Retrobrands USA, including the infringing activities, tortious acts and acts of unfair competition complained of herein.　Upon information and belief, defendant Kaplan maintains a residential address at 133 N. Pompano Beach Blvd., Apt 307, Pompano Beach, Florida 33062-5720. Defendants Retrobrands USA and Kaplan are hereinafter collectively referred to as "**Retrobrands**" or "**Defendants.**")

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

*A.　　Unilever's Intellectual Property*

6.　　Unilever is a leading manufacturer, distributor and seller of beauty, skin care and personal care products such as shampoos, conditioners, hair styling creams and gels.　Unilever distributes and sells its personal care products under the well-known SUNSILK brand through a

3

variety of trade channels including through third-party retailers such as drugstores, superstores, supermarkets and online retailers such as Amazon.com and Drugstore.com.

7.     Unilever's SUNSILK brand products are also currently available and sold in the United States and many other countries throughout the world (Asia, Latin America and the Middle East) by Unilever, its affiliated companies and through third-party retailers.  Unilever's SUNSILK brand is the number one hair care brand in Pakistan, India, Brazil, Argentina, Bolivia, Bangladesh, Sri Lanka, Indonesia, and Thailand.

8.     Unilever's SUNSILK products have been sold in the United States long before the prior acts of Defendants complained of herein.

9.     Unilever's SUNSILK brand products are currently available and sold to consumers throughout the United States.

10.    Unilever and its predecessors, affiliates and third-party retailers have sold and continue to sell their SUNSILK brand products in distinctive product packaging bearing the SUNSILK Marks.

11.    Unilever has invested significant time, effort, and financial resources in the marketing, promotion and development of the SUNSILK Marks.  Unilever's SUNSILK brand of personal care products have been extensively marketed, advertised and promoted in various media outlets in the United States and abroad including television, print, and Internet.  The well-known SUNSILK Marks have appeared on product packaging, television commercials, print advertisements, and other materials.

12.    As a result of the substantial time, effort, and financial resources that Unilever has invested developing, marketing, promoting and advertising Unilever's SUNSILK brand products, the SUNSILK Marks have acquired and maintained a highly-regarded reputation and

substantial goodwill.  The SUNSILK Marks symbolize the substantial and material goodwill that Unilever has created for the SUNSILK Marks throughout the United States and abroad.

13.     Because of Unilever's extensive marketing, advertising and promotion of the SUNSILK Marks and the products sold thereunder, Unilever's SUNSILK Marks have acquired enormous value and secondary meaning and have become extremely well known to the consuming public and trade as identifying and distinguishing Unilever's SUNSILK brand products from those of their competitors.

14.     Unilever's SUNSILK products are extremely popular and beloved by consumers and renowned for their quality and reputation both in the United States and abroad.  As a result, Unilever's SUNSILK brand products have gained a loyal following both in the United States and abroad.

**B.      *Defendants' Violation of Plaintiff's Intellectual Property Rights and Defendants' Acts of Unfair Competition***

15.     Despite having actual knowledge of Unilever's prior and exclusive rights in the SUNSILK Marks, Defendants willfully infringed Unilever's exclusive rights in the SUNSILK Marks and violated Unilever's intellectual property rights through the marketing and promotion of Defendants' own line of personal care and hair care products in connection with simulations and/or colorable imitations of Unilever's SUNSILK Marks (collectively the "**Infringing Marks**").

16.     Defendants adopted, commenced use of and/or are planning to commence use of the Infringing Marks with the intent and purpose of trading on the extensive goodwill built up by Unilever in its SUNSILK Marks and to illegally profit from and reap the benefits of years of effort and investment by Unilever in its well-known and highly regarded SUNSILK products.

17.     Defendants intended to trade upon and illegally profit from Unilever's substantial goodwill by adopting Plaintiff's SUNSILK Marks and using them to market, advertise and promote Defendants' own line of personal care and hair care products ("Infringing Products").

18.     Defendants' activities are clearly intended to confuse consumers as to the source of Defendants' SUNSILK products and create a false association between Defendants' SUNSILK products and Unilever's SUNSILK brand products in the minds of the consuming public.

19.     Defendants' unauthorized use of the Infringing Marks in connection with the Infringing Products is likely to deceive, mislead and/or confuse the consuming public because, *inter alia*, Unilever's SUNSILK Marks and Defendants' Infringing Marks are identical. Accordingly, consumers are likely to believe that the Infringing Products originate and/or are licensed from, or sponsored, approved, endorsed, or authorized by, and/or are otherwise affiliated with, Unilever and/or its SUNSILK brand.

20.     Defendants' conduct is part of a pattern of deliberate and willful infringement designed to create consumer confusion and exploit the intellectual property of Unilever's SUNSILK brand. On their website located at http://retrobrands.net (the "**Retrobrands' Website**"), Defendants admit their scheme to exploit and profit upon famous brands: "[o]ur mission at RetroBrands U.S.A. LLC is to revive 'abandoned' consumer iconic brands and to bring them back to the marketplace. We are actively seeking out famous trademarks that are no longer important to their original owners but might be to us."  Attached hereto as **Exhibit "1"** are print-outs from Retrobrands' Website.

21.     As further evidence of Defendants' willful infringement of Unilever's SUNSILK intellectual property, Retrobrands created and distributed marketing materials to advertise and

6

promote its infringing SUNSILK brand and products (the "**Infringing Marketing Materials**"). Retrobrands' Infringing Marketing Materials consist almost entirely of photographs of Unilever's SUNSILK products, product lines, branded artwork, advertisements and commercials (collectively, the "**SUNSILK Intellectual Property**").  Attached hereto as **Exhibit "2"** is a copy of Retrobrands' Infringing Marketing Materials which are available for download on the Retrobrands' Website.

22.    Not only was the SUNSILK Intellectual Property used without Unilever's knowledge, authorization or permission, but Retrobrands clearly knew that the SUNSILK Intellectual Property belonged to Unilever and that the SUNSILK Intellectual Property was being used without permission.  Indeed, underneath the photographs of the SUNSILK products featured in the Infringing Marketing Materials, Retrobrands published a disclaimer acknowledging that it knew that the SUNSILK Intellectual Property belonged to Unilever. Specifically, Retrobrands acknowledged that: "SUNSILK PRODUCT IMAGES SHOWN OWNED BY UNILEVER."  Nor could Retrobrands have been under any illusion that the SUNSILK Intellectual Property was being used with the authorization of Unilever as Retrobrands never even sought—much less received—Unilever's consent to use its intellectual property.  Accordingly, Retrobrands clearly knew that the SUNSILK Intellectual Property belonged to Unilever and was being used without Unilever's permission.

23.    Further exacerbating confusion is the fact that Retrobrands' Website also features various commercials for Unilever's SUNSILK personal care products ("**SUNSILK Commercials**").  Attached hereto as **Exhibit "3"** are print-outs of the Retrobrands' Website showing Retrobrands' use of the SUNSILK Commercials.  The SUNSILK Commercials were not only used without Unilever's knowledge, authorization or consent, but, once again,

Retrobrands made no effort to obtain Unilever's permission or consent to use the SUNSILK Commercials despite knowing that the commercials belonged to Unilever.

24.     Clearly not content with merely infringing Unilever's SUNSILK Intellectual Property, Retrobrands is attempting to create a false association between Unilever's use of SUNSILK and Retrobrands' own unrelated use of SUNSILK.

25.     Retrobrands made false and misleading statements clearly designed to deceive the consumer into believing that its planned use of SUNSILK is sponsored, approved, licensed, endorsed or authorized by Unilever, and/or associated with or otherwise related to, Unilever's use of the SUNSILK Marks.  Indeed, rather than discussing its own products or plans for the brand, Retrobrands' Infringing Marketing Materials focus upon--and highlight--Unilever's historical and current use of its SUNSILK brand (including providing information about the sales and popularity of Unilever's SUNSILK products around the world and the potential market for these products in the United States).  Using these facts as its background, Retrobrands then goes on to state that: "[s]triving to capitalize on continued US customer demand, Sunsilk's™ *new owner* Retrobrands USA LLC is re-introducing the brand to America in 2016."  (Emphasis added).

26.     Retrobrands' statements are clearly false and misleading because Retrobrands is *not* "Sunsilk's™ new owner."  Unilever is the exclusive owner of SUNSILK both in the United States and abroad.  Nor has Retrobrands acquired any rights to the SUNSILK Marks, nor to any of the substantial goodwill existing in the SUNSILK Marks.  Moreover, Retrobrands cannot reintroduce the SUNSILK brand to America because SUNSILK Marks are already currently in use in the United States.

27.     Moreover, Retrobrands' statements are likely to confuse consumers as to the source of the Infringing Products because they are likely to mislead and/or deceive consumers into believing that (1) Retrobrands has some association or affiliation with Unilever and/or its SUNSILK brand products, and/or (2) Retrobrands' products bearing the SUNSILK Marks originate from and/or are licensed, endorsed, and/or approved by, and/or are otherwise affiliated with Unilever—when, in fact, no such connection actually exists.

C.     *Denial of Defendants' Trademark Application*

28.     On December 1, 2015, Defendants filed a Section 1(b) United States Trademark Application (Serial No. 86/834,945) to register SUNSILK in International Class 3, on an intent-to-use basis, in connection with "[a]romatic body care products, namely, shampoo" in the United States Patent and Trademark Office (the "**Application**.")

29.     Contemporaneously with the filing of the Application, Retrobrands submitted to the United States Patent and Trademark Office a declaration averring that:

> [t]he undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. §1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes that applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. §1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

30.     Upon information and belief, Retrobrands perpetrated an act of fraud upon the United States Patent and Trademark Office when Retrobrands misrepresented in the Application under oath, that to the best of its knowledge and belief, no other person, firm, corporation or

association had the right to use the mark covered by the Application, or any semblance thereof, in commerce.

31.     Based on the facts enumerated herein, Plaintiff is informed and believes, Retrobrands filed the Application with full knowledge of: (1) Unilever's longstanding prior use of and exclusive rights in the SUNSILK Marks; and (2) the extraordinary fame and enormous goodwill symbolized by the SUNSILK Marks among the consuming public in the United States.

32.     Unilever believes that it will be damaged if the Application is approved for registration because there is a likelihood of confusion between Unilever's SUNSILK trademark and the applied-for-mark SUNSILK.

**D.     *Retrobrands' Unlawful Conduct is Willful and Intentional***

33.     Retrobrands has engaged and continues to engage in deliberate and willful infringement designed to confuse consumers as to the source of the Infringing Products and trade upon Unilever's valuable intellectual property, goodwill and reputation.

34.     Retrobrands' adoption and use of the Infringing Marks commenced long after and with full knowledge of Unilever's and its predecessors' prior use of and exclusive rights in the SUNSILK Marks.

35.     Retrobrands has refused to cease its infringing conduct despite being put on notice of Unilever's exclusive rights in the SUNSILK Mark.

36.     Prior to the filing of this Complaint, Unilever's counsel sent a demand letter to Kaplan advising Retrobrands of Unilever's exclusive rights in the SUNSILK Marks in connection with personal care products and that Retrobrands' use of SUNSILK in connection with these products constitutes trademark infringement, and unfair competition in violation of

10

federal, state and common law.  Attached hereto as **Exhibit "4"** is a copy of the demand letter that Unilever's counsel sent to Mr. Jeffrey Kaplan, President of Retrobrands.

37.    Unilever also demanded that Retrobrands immediately cease all use of the Infringing Marks and abandon its Application to file the Infringing Mark.

38.    Despite Unilever's assertions of its rights and demands, Retrobrands has neither ceased its unauthorized use of the SUNSILK Intellectual Property, nor agreed to abandon its Application.

39.    Retrobrands' conduct is intentionally fraudulent, malicious, willful and wanton.

40.    Retrobrands' acts of imitation have been committed with knowledge that such imitation is intended to be used to cause confusion or mistake, or to deceive.

## FIRST CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

41.    Plaintiff re-alleges paragraphs 1 through 40 above and incorporates them by reference as if fully set forth herein.

42.    Plaintiff is the valid owner of the SUNSILK Marks, which is entitled to full recognition and protection under federal trademark law.

43.    Defendants' use of copies, variations, simulations or colorable imitations of Plaintiff's SUNSILK Marks in connection with the marketing, advertising and promotion of the Infringing Products constitutes a false designation of origin, and a false representation that Defendants' products and/or services originate and/or are licensed from, sponsored, endorsed, approved or authorized by, and/or are otherwise affiliated or connected with, Plaintiff and its SUNSILK products.

11

44.     Defendants' use of copies, variations, simulations or colorable imitations of Plaintiff's SUNSILK Marks in connection with the marketing, advertising and promotion of the Infringing Products infringes Unilever's exclusive rights in the SUNSILK Marks, is likely to cause confusion, mistake, or deception, and constitutes unfair competition, in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1).

45.     Defendants used copies, variations, simulations or colorable imitations of the SUNSILK Marks with full knowledge of Plaintiff's longstanding and extensive prior use of the SUNSILK Marks.

46.     Defendants knowingly adopted and used copies, variations, simulations or colorable imitations of the SUNSILK Marks with full knowledge of Plaintiff's longstanding and extensive prior use of the SUNSILK Marks.

47.     Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

48.     Defendants' conduct is causing immediate and irreparable injury to Plaintiff, and to its valuable goodwill and reputation, and will continue both to damage Plaintiff and to confuse the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## FALSE ADVERTISING (15 U.S.C. § 1125(a))

49.     Plaintiff re-alleges paragraphs 1 through 48 above and incorporates them by reference as if fully set forth herein.

50.     Defendants have falsely represented to the trade and to the public that Defendants are the "new owners" of Plaintiff's SUNSILK Marks and that Defendants' Infringing Products originate and/or are licensed from, are sponsored, endorsed, approved or authorized by, and/or are otherwise affiliated or connected with, Plaintiff and its SUNSILK brand products.

51.     Defendants' false and/or misleading statements are likely to deceive the consumer and/or cause confusion or mistake.  Members of the trade and public are likely to believe Defendants' false and misleading statements regarding Plaintiff's SUNSILK Marks and products, and rely on such statements in making purchasing decisions.

52.     Defendants' conduct is causing immediate and irreparable injury to Plaintiff, and to its goodwill and reputation, and will continue both to damage Plaintiff and to confuse the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**COMMON LAW UNFAIR COMPETITION**

53.     Plaintiff re-alleges paragraphs 1 through 52 above and incorporates them by reference as if fully set forth herein.

54.     Defendants were aware of Plaintiff's prior rights in and use of its SUNSILK Marks and Defendants adopted and used the Infringing Marks and the SUNSILK Intellectual Property in disregard of Plaintiff's prior rights and reputation.

55.     Upon information and belief, Defendants have engaged in unlawful practices, unfair methods of competition, and unconscionable, deceptive and unfair trade practices in violation of Plaintiff's rights under Florida common law.

56.     Upon information and belief, Defendants have engaged in fraudulent business acts and/or practices which are likely to have deceived consumers and will continue to deceive consumers unless restrained.

57.     Defendants' activities have resulted in the trading upon and misappropriation of Plaintiff's valuable goodwill and business reputation at Plaintiff's expense and at no expense to Defendants.  The effect of Defendants' misappropriation of the goodwill symbolized by the

13

SUNSILK Marks and the SUNSILK Intellectual Property is to unjustly enrich Defendants, damage Plaintiff and confuse and/or deceive the public.

58.     Defendants' conduct constitutes unfair competition with Plaintiff, all of which has caused and will continue to cause irreparable injury to Plaintiff's goodwill and reputation unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**<u>COMMON LAW TRADEMARK INFRINGEMENT</u>**

59.     Plaintiff re-alleges paragraphs 1 through 58 above and incorporates them by reference as if fully set forth herein.

60.     Upon information and belief, Defendants were aware of Plaintiff's prior rights, and adopted and used the Infringing Marks in disregard of Plaintiff's rights.

61.     Upon information and belief, Defendants' use of the Infringing Marks has resulted in the misappropriation of and trading upon Plaintiff's goodwill and business reputation at Plaintiff's expense and at no expense to Defendants.   The effect of Defendants' misappropriation of Plaintiff's SUNSILK Marks and the substantial goodwill symbolized thereby is to unjustly enrich Defendants, damage Plaintiff and confuse and/or deceive the public.

62.     Defendants' conduct constitutes trademark infringement in violation of Florida common law.

63.     Defendants' unauthorized, intentional, willful and bad faith acts have caused and will continue to cause irreparable injury to Plaintiff's goodwill and reputation unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**DENIAL OF TRADEMARK APPLICATION FOR REGISTRATION**

64.     Plaintiff re-alleges paragraphs 1 through 63 above and incorporates them by reference as if fully set forth herein.

65.     Defendants' United States Trademark Application Serial No. 86/834,945 for SUNSILK in International Class 3 for "[a]romatic body care products, namely, shampoo" should be denied registration because Plaintiff will be damaged by registration of the Application because consumers familiar with Plaintiff's SUNSILK Marks are likely to believe, mistakenly, that Defendants or Defendants' Infringing Products emanate from, are sponsored, endorsed or authorized by, or are otherwise associated with Plaintiff in violation of Section 2(d) of the Lanham Act, as amended, 15 U.S.C. Section 1052(d).  As a result, registration for the applied-for-mark will cause substantial damage and injury to Plaintiff.

66.     Registration of Defendants' Application should also be denied because, upon information and belief, Defendants perpetrated acts of fraud upon the United States Patent and Trademark Office in connection with the filing of the Application.  Specifically, upon information and belief, Retrobrands misrepresented under oath, in the Application, that to the best of its knowledge and belief, no other person, firm, corporation or association had the right to use the mark covered by the Application, or any semblance thereof, in commerce.  However, upon information and belief, Retrobrands made this statement with full knowledge of: (1) Unilever's longstanding prior use of and exclusive rights in the SUNSILK Mark; and (2) the extraordinary fame and enormous goodwill symbolized by the SUNSILK Marks among the consuming public in the United States.

15

67.     Based on the foregoing, Plaintiff believes that it will be damaged by registration of the SUNSILK Marks, as shown in the Application, and respectfully requests that the registration sought by Defendants be denied.

**WHEREFORE**, Plaintiff demands judgment as follows:

1.     Preliminarily and permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants from:

(a)     using or authorizing any third party to use as a trademark, service mark, domain name, business name, trade name or symbol of origin:  the Infringing Marks, the Infringing Marketing materials, the SUNSILK Marks, the SUNSILK Intellectual Property, any name or mark incorporating SUNSILK, and/or any other counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's SUNSILK Marks and/or SUNSILK Intellectual Property in any manner or form, on or in connection with any business, products or services, or in the marketing, advertising and promotion of same;

(b)     imitating, copying or making any unauthorized use of Plaintiff's SUNSILK Marks or SUNSILK Intellectual Property, and/or any copy, simulation, variation or imitation thereof;

(c)     making or displaying any statement or representation that is likely to lead the public or the trade to believe that Defendants' Infringing Products are in any manner associated or affiliated with or approved, endorsed, licensed, sponsored, authorized or franchised by or are otherwise connected with Plaintiff;

(d)     using or authorizing any third party to use in connection with the rendering, offering, advertising, or promotion of any goods, any false description, false

16

representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress which falsely associate such goods or services with Plaintiff or tend to do so;

(e)     diluting the distinctive quality of Plaintiff's SUNSILK Marks and/or SUNSILK Intellectual Property;

(f)     registering or applying to register as a trademark, service mark, domain name, trade name or other source identifier or symbol of origin, the Infringing Marks, whether by themselves or in combination with any other words or designs, or any other mark, trade dress or name that infringes on or is likely to be confused with Plaintiff's SUNSILK Marks or Plaintiff's SUNSILK Intellectual Property;

(g)     engaging in any other activity constituting unfair competition with Plaintiff, or constituting an infringement of Plaintiff's SUNSILK Marks or SUNSILK Intellectual Property, or Plaintiff's rights therein; and

(h)     aiding, assisting or abetting any other party in doing any act prohibited by sub-paragraphs (a) through (h).

2.     Requiring Defendants to formally abandon with prejudice any and all registrations, or applications to register, any trademark, service mark, domain name or trade dress consisting of, containing, or confusingly similar to, the Infringing Marks or Plaintiff's SUNSILK Marks either alone or in combination with other words and/or designs, and to voluntarily cancel with prejudice any registration that may issue from such applications during the pendency of this action.

3.     Directing the Commissioner of Patents and Trademarks to deny with prejudice Defendants' U.S. Trademark Application Serial No. 86/834,945.

17

4.     Requiring Defendants to direct all distributors, retail establishments or wholesale establishments to cease the distribution or sale of the Infringing Products or any other goods marketed in connection with, and/or bearing, the Infringing Marks.

5.     Directing that Defendants deliver for destruction any Infringing Products and any other products, advertisements, or other materials in its possession, or under its control, incorporating the Infringing Marks (including, but not limited to, the Infringing Marketing Materials) and/or bearing simulations, variations or colorable imitations thereof, whether used alone or in combination with other words and/or designs.

6.     Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any product or service manufactured, sold, distributed, licensed or otherwise offered, circulated or promoted by Defendants is authorized by Plaintiff or related in any way to Plaintiff's SUNSILK brand products.

7.     Directing that Defendants file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

8.     Awarding Plaintiff such damages as it has sustained or will sustain by reason of Defendants' trademark infringement, trademark dilution, and unfair competition.

9.     Awarding Plaintiff all gains, profits, property and advantages derived by Defendants from such conduct; and pursuant to 15 U.S.C. § 1107, awarding Plaintiff an amount up to three times the amount of the actual damages sustained as a result of Defendants' violation of the Lanham Act.

10.     Awarding Plaintiff exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate.

18

11.   Awarding Plaintiff its costs and disbursements incurred in this action, including its reasonable attorneys' fees.

12.   Awarding Plaintiff interest, including pre-judgment interest, on the foregoing sums.

Dated: May 10, 2017.

Respectfully submitted,

**DUANE MORRIS LLP**

By:   /s/ Lida Rodriguez-Taseff
        Lida Rodriguez-Taseff, Esq.
        Florida Bar No. 39111
        LRTaseff@duanemorris.com
        Secondary E-mails:
        RLGuillou@duanemorris.com
        YArnavat-Parga@duanemorris.com
        200 S. Biscayne Boulevard, Suite 3400
        Miami, Florida 33131
        Tel:   (305) 960-2242
        Fax:   (305) 960-2201

        *Of Counsel*

        DUANE MORRIS LLP
        Gregory P. Gulia, Esq.
        *(pro hac vice* application forthcoming)
        GPGulia@duanemorris.com
        Vanessa C. Hew, Esq.
        *(pro hac vice* application forthcoming)
        VCHew@duanemorris.com
        1540 Broadway
        New York, New York 10036-4086
        (212) 692-1000

        *Attorneys for Plaintiff, Conopco, Inc. d/b/a Unilever*

DM2\7808915.3

19